It is number 21-11565, Sean Reilly v. Secretary of the Florida Department of Corrections. Mr. Waller. Yes, Your Honor. May it please the Court. Let me just say, because I sometimes forget to do it at the end of an argument, we know that you're court appointed for Mr. Reilly and we appreciate your service to him and to us. Yes, Your Honor. Thank you. It's a privilege and an honor to be here, so thank you. I appreciate it. May it please the Court. This appeal stems from the dismissal of a petition for writ of habeas corpus filed in 2020 by Mr. Sean Reilly. That petition challenged one judgment, a judgment from 2009, the judgment of conviction. Now, that was the first time that that judgment had ever been challenged. It had never been challenged in any previous petitions filed by Mr. Reilly, which, as I'm sure you're aware, there were several. But it wasn't until 2020 that he filed a petition for writ of habeas corpus on the 2009 original judgment. I do want to talk about one of those previous petitions because I think it's important. The 2018 petition for writ of habeas corpus filed by Mr. Reilly, which challenged a separate judgment. It challenged V.O.P. judgments from 2010. And I apologize if I'm using defined terms that we use in the briefing, but if anything is confusing. Let me ask you about that. So when when that petition challenged the 2010 judgment, the 2010 judgment was based on the 2009 conviction. Right? Yes, Your Honor. You've got the 2009 conviction and sentence, and then 2010, he gets basically revoked. You get a new sentence in 2010. Why isn't the challenge to the 2010 also a challenge to the 2009, given that the 2010 arises from the 2009 and wouldn't have existed without the 2009? They're separate judgments. You know, there you have a judgment of conviction in 2009 and then a separate judgment for violation of the supervisory portions of of his original sentence, Your Honor. So it's even though even though I think you can't have one without the other, there's still two separate judgments with two separate sentences. And the sentence is the judgment, Your Honor. Yeah. So if you're going to say they're separate and look, this is a tricky case. I mean, pro se people make for the trickiest cases, you the purposes of evaluating whether this is a successive petition, then how can you say he's in custody under the 2009 judgment, given what has happened since then? So it seems it seems like you're sort of in a catch 22, where if we say they're separate, then he's not in custody on the 2009 because he's in custody. Actually, he's under custody in 2015. Right. So they have to be connected for him to challenge the 2009. So what do you say about that? Well, Your Honor, first, I do agree we're going to catch 22, though it may not be the same one that you're talking about. But in terms of being different judgments, the it gets back to the garlic case, garlic versus Fortis, where if you're in custody on consecutive sentences, you're basically it's considered an aggregate and you're going to be in custody for any one of them, Your Honor. And so it's and that's cited in our city requirement. I think it's a dispositive case for us because all of his sentences were consecutive. I mean, he had 2009 sentence, which was which led into the 2010 V.O.P. judgment, which was consecutive. And then I'm sorry, but so maybe I just misunderstand. I mean, this is so convoluted, but I thought the 2009 sentence was probationary. No, Your Honor, there was there was there was some time, but but then he got out and then it was revoked in 2010. Yes, Your Honor. So this this isn't a consecutive sentence where he's he's got like multiple sentences stacked on top of each other, one of which is 2009. Right. His Senate, if he's under Senate, if anything from 2009 or 2010, the 2010 is what he's the if he's under anything that's not 2015. Right. Not necessarily, Your Honor. If he's if he's still even if he's not in physical confinement, even if he's not in jail, if you're under the supervisory portions of your sentence, then you're still considered in custody for the purposes of the original sentence, the original judgment. And so he was he was in custody since 2009 consistently, either either being physically confined in the jailhouse or he was confined in the sense that he was in custody under the, you know, requirements and prohibitions of his supervisory portions of his sentences. The cleanest way, I think, to explain your argument, and we have to figure out whether it's the right one or not, but I think if I've read everything correctly, the cleanest way to understand your argument is this. Tell me if I've missed anything. There is only one current habeas judgment on the merits against Mr. Riley, and that is the 2018 the judgment on the 2018 habeas petition. Yes. Right. We're right so far. So this has to be if it's second or consecutive, it has to be second or consecutive to that judgment because it's the only habeas judgment out there right now. Yes, Your Honor. Okay. The second part of your argument, the way I understand it is that 2018 habeas petition when it challenged the 2010 VOP did not raise any 2009 judgment issues. Absolutely. It was only based on things that happened in the 2010 VOP proceeding. Absolutely. Yes, Your Honor. As a result, step number three, your argument goes, the 2018, the judgment on the 2018 habeas petition can't be consecutive as to the 2009 judgment. Your argument, this is my fourth, not yours, but my fourth, things might be a little different had he challenged part of the 2009 proceedings along with the 2010 VOP in the 2018 habeas petition. It certainly would be different, but he couldn't have done that, Your Honor. He couldn't have challenged the 2009 judgment at the time he filed the 2018 habeas petition because it hadn't exhausted in state. No, no, but he could have challenged some things because, I mean, I know that habeas petitioners are sometimes put in a difficult position of choosing remedies, but he could have immediately filed a habeas petition on claims that were exhausted already in the 2009. There are some things you exhaust at the trial and direct appeal level that you don't have to raise again on state post-conviction. For example, if you claim that the statute under which you're being charged, tried, and convicted is facially unconstitutional, you raise that issue at trial, it gets rejected, it gets rejected on direct appeal, you don't have to raise that again in state post-conviction to exhaust. You've exhausted, and you can go, if you want to forego any other claims, you can go into, theoretically, federal court and raise that claim. All I'm saying is he could have, but did not, raise 2009 claims in the 2018 petition. I hear you, Your Honor. The key point, from our perspective, is that he would have foregone certain claims that were ultimately raised regarding the 2009 judgment because... See, but to me, as a functional matter, I completely understand that from his perspective. But from a legal matter, I don't think it matters to me. The rock and a hard place that he was put in, I don't think matters to me jurisdictionally. But what does matter to me is that he did not raise anything, for whatever reason, related to the 2009 judgment in the 2018 petition. And therefore, the argument goes, the 2018, the judgment on that 2018 petition doesn't make this one second or successive. That's the way I understand your case. And, Your Honor, I'm not going to argue with that. You can't have it. You think it's wrong. I don't want to... Well, I don't think it's wrong, Your Honor. I think the only point that is really worth stressing, from our perspective, is the situation that you've described, I think, puts Mr. Riley in a position where he has to choose what constitutional claims to pursue or not. And if he's under the gun, under AEDPA's one-year statute of limitations, and he still has claims pending, you know, regarding his post-conviction claims, if he has those pending in the DCA, then he's put in a position where, you know... But Burton, I mean, doesn't the U.S. Supreme Court's case in Burton recognize that, but say you have to make a choice? At some point you do, Your Honor, but I can't imagine a situation where a prisoner filing a petition for federal writ of habeas corpus has to forego constitutional claims because the procedure is still playing out on everything that's happened to him. But that's the point, I think. Right. It's a very tough decision to make. It might not even be fair, but again, I think Burton says that's just how AEDPA works, and the petitioner has to make a decision and in an abundance of caution that all of the claims, even the unexhausted ones, should be in there so that at some point they're still preserved. Your Honor, I hear you. I think my response to that is you get into a situation where you're filing a petition with unexhausted claims and has advised against, and so he'd be put in a position where, and I see my time is up, Your Honor, I can come back... You can finish answering Judge Abudu's question and then you can wrap up. Thank you, Your Honor, and thank you, Your Honor. If he had filed a claim, a petition with exhausted and unexhausted claims, then he's put in a position where he has to ask the court, the district court, to stay and obey, which the 11th Circuit has said, has advised against. At Which 11th Circuit cases are you referring to for that problem? I believe, Your Honor, let's see. Well, maybe in your rebuttal time. Stewart, Your Honor, and yes, I will address it further in my rebuttal. Thank you for your time. Mr. Duffy, good morning. Good morning, sir. Thank you, and may it please the court, counsel. I am, for the record, Thomas Duffy on behalf of the secretary here. I don't think there's any rock or any hard place here that any habeas petitioner faces today based on what was just discussed. From Rose v. Lundy forward, there's been an increasing, what's the word, comfort with the stay and obey procedure. That has become more or less fairly common and it's really a kind of . . . there are cases that we've cited in our brief that say it was really a good idea to have the stay and obey available to petitioners. In this case, that wasn't necessary because Mr. Riley's confinement was under state or federal, by going to the Supreme Court, seeking certiorari at the Supreme Court. It was told until 2020, until January of 2020. This petition could have been filed in 2020 and still would have been timely up to January of 2021. You agree that the only judgment that's out there, and we have to figure out its effect, the only judgment that's out there is the judgment on the 2018 habeas petition, is that right? That is the only present federal judgment, yes, sir. So whether or not this is second or successive, it has to be second or successive, yes or no, as to that judgment, right? That's correct. You're correct. There were no claims brought in this case, in the 2018 petition, there were no claims that were brought challenging the 2009 original judgment. Then why is this second or successive? Well, that goes back to our position, and I hate to replow the same ground I unsuccessfully plowed back in July, but that goes to our position continues to be that there are good, valuable reasons why you should be able, you should be required to bring a habeas petition, especially when there's no issue with exhaustion or timeliness, that every claim that you have arising out of what happened in this specific case in a single proceeding. In the previous case, though, there was an intervening judgment. I mean, that's the way we described it in that opinion, was that you had the habeas petition that was filed challenging the 2010, and then post the 2010, you had a 2015 judgment, and then we said, well, you could file another habeas petition challenging the 2015 judgment. Here, we're trying to go back from 2010 to 2009, right? Yes, well, the 2021 one, which is the case that has been decided, also challenged the 2009 judgment. I wasn't... You're right that this is piecemeal litigation. I am correct, yes. I think you are right about that. Yes, and the reason... But piecemeal does not mean second or successive necessarily. I respectfully disagree. Mr. Riley has also, the way I look at this case, Mr. Riley has all sorts of procedural problems with this case, just like he had with the 2021 case, but they may not be second or successive problems. He may have default issues. He may have exhaustion issues. He may have timeliness issues. He may have all sorts of problems, but I'm not sure that they're second or successive problems. We maintain that it would be under Burton. We maintain that Burton and this petition, he then got a 1998 resentencing. Later in 1998, he filed a habeas petition, but he had checked only the conviction and not the 1998 new judgment. When he filed again in, I think, 2000, I'm not certain on the dates. When he filed again, it went to the United States Supreme Court and that that was second or successive because he had an intervening judgment, but he had already made his habeas petition attacking that. He could have attacked, I'm sorry, let me say that more succinctly. He could have attacked the 1998 resentencing judgment in his 1998 habeas petition or in a habeas petition, you know, timely after that. So that's exactly the distinction here. Mr. Riley had a 2015, he had a 2009 judgment and a 2010 judgment that superseded the 2009. Then he got a 2015 judgment and filed a habeas petition in 2018 where he could have attacked all of those proceedings because the judgment as Magwood versus Patterson and this court's case in Ferreira and its case in Insignares all say the relevant judgment for habeas is the And I might or may very well agree with you, but I would say in Burton perhaps what's distinguishable is that it was essentially the same sentence. Even the resentencing resulted in the same sentence as opposed, if I understand Mr. Riley, he had a sentence of actual incarceration and then he had essentially the violation of probation and probation itself had its own sentence. So why is that not distinguishable enough from the sentence at issue in Burton? I don't, I think it's a distinction without a legal difference. I don't see any legal difference. If you get into that, then you're really getting, you know, you're sifting it out pretty finely there to say, okay, well, this was a different sentence than the other sentence that we want. Habeas is an extraordinary relief for someone obviously who's seeking not be in custody. So to engage in that fine or detailed level of distinction when the stakes are so high, when you're talking about incarceration, seems worthwhile to me. That, I understand that position. I would say one thing first, that's kind of inconsistent with the principles that led to the ADPA being passed and it's inconsistent with the case law that has developed especially out of the United States Supreme Court since that happened. But where the sifting takes place and should take place is on the facts underlying the case. What would make the person be entitled to judgment in federal court because there was an extreme malfunction of the criminal justice system in his criminal, in his case. So that's my answer to that. Is that, did I address it or did I just babble on? I appreciate your response. Thank you. There, we think there's an important useful distinction kind of in terms of how its things are termed that between a judgment that authorizes custody or confinement and the proceedings that led up to that custody or confinement. The led up to, you know, the earlier judgments are not, let me back up. The only judgment that counts, as I said, is the 2015 judgment. In this case, the timeline is this. And just to clarify that. Why does the 20, wait, you said the 2015 judgment is the only one that matters? For habeas, yes. Because that's, but you have to allege the, you were in custody on the 2015 judgment because that is the one that authorizes the confinement. The, you know, the very first things in the ADPA are that you are in custody in violation of the constitution laws or treaties of the United States. But that's an, if you're right about that, that's an in custody problem and a different jurisdictional problem, not a second or successive problem. No, I understand that. Yes. Even though they do tend to overlap. No, there is. I think you're right. I think there is some overlap. You have conceptually, doctrinally, I agree with that, but that's what I'm trying. And I think Judge Brasher is right that these cases are made complicated by Mr. Riley's, you know, pro se filings, but I'm trying to figure out why second or successive is the way to attack this current habeas petition, as opposed to one of the other myriad procedural challenges that can be made by the state on it, like lack of custody for the relevant judgment. Yes, that was, in this petition, the magistrate actually solicited that response from the state and then kind of went in a different direction, apparently, than our response was. I didn't do the response and I don't specifically remember. Yeah, but your position, if I'm understanding right, is it's either successive because it attacks the same judgment as his previous one, or it attacks a different judgment that he's not in custody under, right? Yes, but those are independent of one another, as we argued in our brief. Yeah, well, I don't think they are independent of each other, but let's just talk about the— In other words, you could rule that it was not second or successive, but that the second ground that Judge Timothy recommended for dismissal under Lackawanna, that that was a valid ground. You could say, okay, it's not second or successive, but her second— The lack of custody, right, yeah. That's what I meant by that, them being independent of each other. They do overlap. Well, let me ask you about the in-custody issue. So, is he in custody under the 2009 judgment still? No, he's no longer in custody. The response, well, I know he's not physically in custody now because he's out, but I mean, the response is that these are a series of consecutive sentences that all go back to the 2009. What do you say about that? Well, first, the fact that they go back to the 2009 seems legally irrelevant to me. If you're going to say that the judgment that counts is the one that he's serving right now, you can perhaps bring issues related to the 2009 proceedings, but you cannot, but you have to, excuse me, you have to challenge, your challenge has to be to the one that, to the judgment that's keeping you confined. You're looking puzzled. Am I not making sense? No, I understand the point. I guess, I don't know that that's responsive to the other side's that. I guess, what was his sentence in 2009? His sentence in 2009 was 11 months and 29 days of county jail time, followed by years of community control and probation. And there were two different crimes there. We're only there on the one that for shorthand purposes, I call identity theft. That's not quite it, but it's just a mouthful of state law stuff. Right. So then in 2010, oh, sorry, go ahead, you're back. And then he, the probation was violated. And then in 2010, he was sent to prison on one of those to be followed by probation. And those were consecutive sentences. Counsel is correct. Those, all that, all that was to run consecutively. From 2010 is where you get a consecutive prison and some more probation. I think the initial one may have been consecutive as well. These were third degree felonies, maximum penalty, maximum incarceration of five years. And I think they were stacked initially, but I know they were by 2010. And then in 2015, just to the earlier, one of the earlier cases had already been served out. That, that one was off. So we're down to the identity theft and then the new law violation in 2014, that those were served consecutively. So in 2015, the new thing in 2015, as it relates to anything previous, was a revocation of probation that was imposed in 2010. Yes, that's revoked that probation and sentenced him to prison on that and a consecutive to a prison, a sentence for the new law violation. Yep. No, I think, I think that makes sense. So, I mean, so, I mean, your position is that he's not serving anything from that 2009 judgment. That would be, that, that was certainly as the Judge Timothy looked at it in the, in the state court and we believe her position was correct. How does, how does in custody work? I mean, Lackawanna talks about, the language of Lackawanna is that if a state conviction is no longer open to direct or didn't choose to pursue remedies that were then available, you can't challenge it in a habeas judgment, even if the other conviction was used to enhance. But here is, that was the holding in Lackawanna. Yes, sir. Right, right. I'm trying to describe it. I'm, I'm glad I described it correctly, but the, the question is, why is the first part of Lackawanna applicable here in Mr. Riley's view, the 2009 judgment, whatever you think of the attack on it, was open to direct and collateral attack. He pursued, in his opinion, all of those direct and collateral attacks and he has filed in his view, a timely habeas petition as to that judgment. So, why does Lackawanna apply on the magistrate judges and district judges alternative ground? Well, we think there's two things. One, it's a pleading deficiency to challenge the judgment that you're not serving on. But two, I think Lackawanna, while it's not precisely on point factually, it does in fact deal with enhancements, in this case does not deal with enhancements. What the judge found was that that 2009 sentence had expired. It expired, I guess, in 2010 and then expired, then that sentence expired in 2015. That would be the way I would look at it. But Lackawanna also had some principles that we think are important. They identified in Lackawanna two things that were important. The need for finality of convictions and ease of administration and what they said, and I think this language resonates, once a judgment is final, the state obtains a strong interest in preserving the judgment's integrity. I think that's important that you can't keep going back and back and back to attack the same judgment. And they said that also other jurisdictions also may use one of those judgments for enhancement. So that protects the original state court judgment. But I thought Lackawanna also provides an exception if you're not represented by counsel because of how complicated this is even for attorneys and judges. Well, if you were not represented by counsel at trial or in the trial proceedings, and Mr. Riley was. All right. Thank you very much. We ask that you affirm. Thank you, Mr. Duffy. Mr. Waller, during the time you have left, if you could address the alternative ground on which the magistrate judge and the district judge dismissed on jurisdictional grounds, which is that he wasn't in custody anymore on the 2009 judgment. Yes, Your Honor. And I'm glad you said that because it's number one on my list. So the problem with the district court's reasoning with respect to the in custody argument is she sentences, then you're in custody under any one of them for purposes under the habeas statute. I mean, that's a that's a direct quote from the Garland, the Garland case. And while the district court's report and recommendation addressed Lackawanna and Judge Voodoo, the opinion itself, excuse me, the report itself talks about, you know, the exception from Lackawanna about how he had counsel. So that doesn't apply to him. But there is no discussion of Garland. There's no there were consecutive sentences and that he was. But how how is it consecutive if you if you are if you sustain a violation of probation adjudication, how is that consecutive to the original judgment? Isn't that part of the don't courts treat a violation of probation or supervised release as a sentence on the original judgment, and that's why there's no double problem? Yes, your honor. But I think you also go back to just the fact that it's a separate judgment. But if it's a separate judgment, what's a consecutive to the original judgment? I'm not sure that that's right, because. A sentence, generally speaking, a sentence imposed for a violation of supervised release or as here probation is deemed to be part and parcel of the original judgment. That's why they aren't ex post facto issues. That's why there aren't double jeopardy issues and the like. But your honor, the only thing I would add to that is what the court said in United States versus Llewellyn that for habeas purposes, sentences are all going to be viewed in the aggregate, not as discrete segments. I think when you take that, what this court has said from the Llewellyn case, and you take it in the context of what the Supreme Court has said in Garlett, then I think the argument can be made, your honor, that he's in custody for any one of them. And maybe you're right about that, but I just in the usual consecutive sentence in custody issue, it arises when there's one judgment and the district court or the state court says, okay, you serve five years on the robbery and four years on the rape and nine years on the gun charge and stacks consecutive sentences like that. I'm not aware of a case, and maybe there is one where the argument is that it's consecutive sentences arising from different things that a court has done at different time periods. Your honor, I don't have a case off the top of my head, but what I would say is when you take a step back and just look at his position from 2009 on, he was either in jail or under supervisory, you know, on the supervisory portions of his sentences from 2009 until just a couple years ago. I mean, he was in custody the whole time. So irrespective of the physical confinement, you know, and I hear you and I hear all of you with respect to that issue, and it is tough. Let me ask you another, just another question. So we've said, and the Supreme Court has said that, you know, when we're talking about the judgment that you're challenging for a habeas petition, we mean the conviction plus a sentence, right? That's the judgment. If we apply that same standard to the in custody issue, right, conviction plus a sentence, and then what are you in custody for, how is he, if that applies, how would he still be in custody in 2009, given the separate things that have happened since then? Well, because they all stem from that 2009 original judgment. The, and I may be misspeaking, I don't think I am, but the 2010 VOP judgments, Your Honor, the, he was essentially re-sentenced, re-sentenced for the 2009 original judgment to serve additional time. So, and again, he was, he was in, he was in custody, physical confinement or community service, probation, you know, whatever you want to put 2009 on. Again, obviously you're in a very difficult position and Mr. Riley, as Judge Brasher said, has made this perhaps unnecessarily convoluted. Assuming that Burton precludes or prohibits the arguments you're making, what other perhaps due process concerns do you believe perhaps Burton didn't really consider that would merit or support a reconsideration of that ruling? Any due process concerns in Burton that would merit a reconsideration? Any due process concerns that have arrived as it pertains to your client and similarly situated individuals that perhaps Burton didn't really take into consideration in making that decision? Your Honor, frankly, I don't think there are any, but I don't think you, I don't think this court has to revisit Burton to... Well, we can't revisit Burton, but in terms of, again, what perhaps, I guess I'm just saying that to the extent that Burton is unfair to litigants when it comes to, you know, a habeas petition based on unexhausted claims, are there other concerns that perhaps, you know, court should consider when it comes to applying Burton? I think, and we raised this in our brief, I don't know that it's necessarily a due process concern, Your Honor, but I think it's a concern where when you look at how AEDPA has the one-year statute of limitations, has exhaustion requirements, and has all these procedural timeframes and deadlines and frameworks that the pro se litigants have to operate under, that when you are put in that situation, you're often faced with the situation where you either have to forego constitutional claims or challenge some. But I will say, Burton, you addressed a distinguish, a distinguishing factor about Burton earlier, and I don't think it's the only one. Burton, I think, is also distinguishable because the Burton petitioner's limitations period hadn't begun to run until well after the first petition in that case was filed. But here, the limitations periods on the 2010 VOP judgments were running before Riley filed the 2018 petition, and the limitations period on the 2009 original judgment was running before Riley filed the 2020 petition. I think that's an additional distinguishing factor from Burton, and I think it's a critical one, Your Honor. Your Honor, I know I'm well past my time, but that was actually one of the other So, with that, unless the Court has any other questions. No, we thank you both very much, and we'll do our best to figure it out. Thank you.